**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MINDY WYMER, et. al.,** | ) | **CASE NO. 1:13CV0699-CAB** |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **RICHLAND COUNTY CHILDREN** | ) | |
| **SERVICES, et. al.,** | ) | **OPINION AND ORDER** |
| | ) | |
| **Defendants.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter comes before the Court upon Defendants' Motions to Dismiss Plaintiffs'

Complaint. (ECF DKT # 12, 14). Because Plaintiffs have failed to allege sufficient facts to

demonstrate any federal causes of action, the Court dismisses these claims. Since the Court

dismisses the federal claims, it refuses to exercise jurisdiction over the state law claims and

dismisses those without prejudice.

## I. FACTS

For purposes of motions to dismiss, the Court accepts all statements in Plaintiffs'

Complaint as true. Plaintiffs are William and Mindy Wymer and their four natural and adopted

children, John Doe's 1-4. (Cmplt. ¶ 5). Defendants are: (1) Richland County Children Services

("RCCS") and (2) Randy Parker, Nikki Harless, Holly Hartman, Marsha Coleman, Michael

Brendemuehl and Alice Ramsay, each in their individual and official capacities as agents or

employees of RCCS. (Cmplt. ¶¶ 7, 8).

1

On December 12, 2011, Plaintiffs took John Doe 4 to the hospital for treatment regarding a fever and chest pain.  (Cmplt. ¶ 11A).  A few days later they returned to the hospital for additional medication.  (Cmplt.¶ 11B).  On December 15, Plaintiffs took John Doe 4 to another hospital where they learned that he had suffered a bone fracture which the child himself attributed to jumping on couches and pillows.  (Cmplt. ¶ 11C).  When Plaintiffs returned home, Defendant Brendemuehl, on behalf of Defendant RCCS, arrived at their house to discern what had happened to John Doe 4.  (Cmplt. ¶ 11D).  John Does 1 and 3 confirmed to him that John Doe 4 suffered the injury while jumping on couches and falling onto the floor.  (Cmplt. ¶ 11D).

Early in the morning on December 16, just a few hours later, Defendant Brendemuehl appeared at Plaintiffs' home again and ordered Plaintiffs to take all the children to a hospital for a physical exam or Defendant RCCS would seek emergency custody of the children.  (Cmplt. ¶ 11F).  A few hours after this encounter, Defendant Brendemuehl appeared again at the house with police officers and removed the children, seemingly for Plaintiffs' failure to take the children to a hospital, commenting that he "had warned the Wymers that this would happen." (Cmplt. ¶ 11G).  Later that same day, Defendant Brendemuehl filed a Complaint in Richland Country Juvenile Court "making allegations against [P]laintiffs Mindy and William Wymer which he [Brendemuehl] knew or with reasonable diligence should have known to be false." (Cmplt. ¶ 11H).  Defendant Brendemuehl additionally alleged that Plaintiffs abused their children.  (Cmplt. ¶ 11H).

Later on December 16, Defendant RCCS held a hearing, which it did not permit Plaintiffs to attend, where it ordered John Does 1-4 to foster care for the weekend.  (Cmplt. ¶ 11I). Plaintiffs allege that Defendant RCCS made "false allegations" against them at the hearing.

(Cmplt. ¶ 11I).  After the meeting, Defendants allowed the children to return home on the condition that Plaintiff Mindy Wymer answer all of Defendants' questions, as well as the questions of the police officers, and that Plaintiff William Wymer leave the home and not contact the children.  (Cmplt. ¶ 11J).  Plaintiffs complied with the demands.  (Cmplt. ¶ 11K).

Plaintiffs attribute these occurrences to animosity Defendants have toward Plaintiff Mindy Wymer based on her previous employment at Defendant RCCS.  (Cmplt. ¶ 9).  Defendant Parker was Plaintiff Mindy Wymer's supervisor and had once told other employees that Defendant RCCS had to eliminate their positions because Plaintiff Mindy Wymer was "so difficult to work with."  (Cmplt. ¶ 9).  Defendant RCCS subsequently reassigned her to a position where a supervisor "harassed and humiliated her to the point that she suffered severe and extreme emotional and physical distress."  (Cmplt. ¶ 9).  She later resigned her position.  (Cmplt. ¶ 9).  Plaintiffs claim that a police officer stated that the removal of the children from their home appeared to be "a personal vendetta against [P]laintiff Mindy Wymer," presumably from this previous employment.  (Cmplt. ¶ 11L).

On December 19, Defendants Hartman and Ramsay attempted to file criminal charges against Plaintiff William Wymer by "falsely stating that John Doe 4 had identified said [P]laintiff by name as a person who had hit him with a fist."  (Cmplt. ¶ 11N).  This is, according to Plaintiffs, despite the fact that Defendants Hartman and Ramsay were aware that John Doe 4 had identified John Doe 3 as the person that had hit him.  (Cmplt. ¶ 11N).

Further, on January 5, 2012, a physician reviewed John Doe 4's x-rays and found a "teeny tiny" fracture which he indicated the child could have sustained from something such as hitting his leg on a table.  (Cmplt. ¶ 11P).  Defendant RCCS later allowed Plaintiff William Wymer to

return home on the condition that he complete a mental health assessment, which he agreed to do.  (Cmplt. ¶ 11Q).  The evaluating therapist later said that "the family appears to be very devoted to the children" but Plaintiffs allege that Defendant Ramsay coerced the therapist into changing his report to demonstrate otherwise.  (Cmplt. ¶ 11R, S).

After further reports from Defendant RCCS found that Plaintiff William Wymer had physically and mentally abused John Doe 4, Plaintiffs filed a grievance with Defendant RCCS regarding the "unfair, irresponsible and retaliatory treatment they had continued to suffer at the hands of [D]efendants."  (Cmplt. ¶ 11T, U).  Plaintiffs maintain that Defendant RCCS never scheduled a hearing to address the grievance or that it did schedule a hearing and only Plaintiffs' counsel was allowed to attend.  (Cmplt. ¶ 11Y).  Defendant Coleman, who handled scheduling of the hearing, denied the grievance and informed Plaintiffs that they would need to file another one to address other issues that Defendant Coleman claimed they did not address previously. (Cmplt. ¶ 11Z).

Plaintiffs appealed the denial of the grievance to Defendant Parker, who failed to timely respond to the appeal but offered to meet to discuss Plaintiffs' concerns.  (Cmplt. ¶ 11BB). Plaintiffs managed to obtain a meeting regarding the grievance on April 12, 2012, where Defendant Harless, who attended on behalf of Defendant Parker, demonstrated that she was predisposed to find against Plaintiffs but was giving Plaintiffs "the hearing to which they were entitled."  (Cmplt. ¶ 11EE).  Plaintiffs maintain that Defendant Harless engaged in "inappropriate, negligent and malicious actions" during the meeting but fail to describe what those actions were.  (Cmplt. ¶ 11FF).

Plaintiffs filed the Complaint on March 30, 2013, alleging that the facts demonstrated

4

Defendants: (1) violated Plaintiffs' equal protection and due process rights; (2) acted in reckless disregard for the well-being of Plaintiffs' family; (3) failed to adequately train employees of Defendant RCCS in matters concerning child welfare and allegations of physical/mental abuse; (4) acted in a way that constitutes "gross negligence/negligence;" (5) violated Plaintiffs' rights "including but not limited to [rights under] the Fourth and Fourteenth Amendments. . . 42 U.S.C. Section 1983, the Ohio Constitution and Ohio Revised Code Chapters 2307 and 5101;" and (6) acted in willful and wanton misconduct and/or reckless disregard for the rights of others. (Cmplt. ¶¶ 12, 18, 23, 26, 29, 32).  Defendants submitted 12(b)(6) Motions to Dismiss for failure to state a claim upon which relief can be granted and Plaintiffs timely responded.

## II.  ANALYSIS

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate when a plaintiff fails to state a claim upon which a court can grant relief.  To survive a motion to dismiss, a claim must contain "facial plausibility" with enough pled facts to allow a court to draw all reasonable inferences in favor of the plaintiff demonstrating that the defendant is liable for the alleged conduct.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When making its analysis, a court must construe all facts in a complaint as true and in the light most favorable to the plaintiff.  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  In addition, "[f]actual allegations contained in a complaint must 'raise a right to relief above the speculative level.'"  *Id.* at 430 (citing *CGH Transport Inc. v.* Quebecor, *World, Inc.*, 261 Fed.App'x 817, 819-20 (6th Cir. 2008)).  Lastly, the complaint must contain more than just legal conclusions and it must state a plausible claim for relief; the complaint must have more than a "the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678; *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

The Court finds that Plaintiffs fail to allege sufficient facts to satisfy *Twombly* and *Iqbal* regarding their federal claims, to wit; failing to state claims that are facially plausible to demonstrate they are entitled to relief.  Because the Court is dismissing the federal claims, it refuses to exercise jurisdiction over the state law claims.

Lastly, Plaintiffs name all Defendant persons in their individual and official capacities. Because Plaintiffs fail to allege sufficient facts regarding any of the federal claims against the Defendants, individually or officially, the Court need not address qualified or absolute immunity defenses.  *See Warmus v. Hank*, Nos. 93-1619, 93-1620, 1995 WL 82061 *4 (6th Cir. Feb. 28, 1995) (recognizing that if the plaintiff has failed to state an actionable claim then the issue of defendant immunity becomes moot).

### A.  Equal Protection and Due Process Claims

Plaintiffs allege that Defendants discriminated against them based on Plaintiff Mindy Wymer's previous employment with Defendant RCCS.  Plaintiffs also maintain that those that do not use Defendant RCCS for child adoption purposes receive better services than those that use Defendant RCCS.  These, Plaintiffs claim, demonstrate an equal protection violation. However, Plaintiffs' assertions fail to satisfy 12(b)(6) motion to dismiss scrutiny.

First, Plaintiffs have not demonstrated that Defendants treated similarly-situated individuals more favorably than Plaintiffs.  The Sixth Circuit has held that in order to maintain a prima facie case for an equal protection claim, a plaintiff must show that the defendant treated similarly-situated individuals more favorably than the plaintiff.  *Harajili v. Huron Tp.*, 365 F.3d 501, 508 (6th Cir. 2004) (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 319 (6th Cir. 2000)).

6

Plaintiffs claim that Defendant RCCS is treating them differently based on Plaintiff Mindy Wymer's previous employment with Defendant RCCS but Plaintiffs have failed to show how Defendant RCCS treated similarly-situated individuals.  Without showing how Defendant RCCS treats families similar to Plaintffs', Plaintiffs can hardly claim that Defendant RCCS is treating them less favorably than others.

In addition, Plaintiffs also claim that Defendant RCCS denied them "equal rights with parents who do not adopt children through [Defendant] RCCS."  But this is not an equal protection claim.  All this demonstrates is that parents who use a different child foster care service receive different, and perhaps arguably better, assistance.  But this goes to the essence of using one entity's services over another: the quality of such services is not uniform from entity to entity.  Even assuming that using different child foster care services can suffice to form an equal protection claim, Plaintiffs' claim still fails 12(b)(6) scrutiny: they have not offered facts showing how other entities treated other families.

Lastly, regarding equal protection, a plaintiff must use more than buzzwords to allege a constitutional violation; a plaintiff must actually demonstrate facts that can show such a violation.  *See Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011) (holding that a plaintiff failed to sufficiently allege an equal protection claim based on gender discrimination when the complaint merely stated that the plaintiff was a female and owned a female business without providing any facts that "[hinted] at gender-based discriminatory animus").  Plaintiffs have failed to plead sufficient facts that adequately allege an equal protection violation.  Plaintiffs solely demonstrate that Plaintiff Mindy Wymer previously worked at Defendant RCCS, that she left because of "harassment" issues and that a police officer

commented it seemed as if there were "a personal vendetta against [her]."  These accusations do not suffice to establish a discriminatory animus toward Plaintiffs.  Coupling this with the failure to present other similarly-situated individuals, Plaintiffs equal protection claim is insufficient to withstand a motion to dismiss.

In addition, Plaintiffs claim Defendants' policies and customs deprived Plaintiffs of their due process rights.  Plaintiffs also claim that the practiced policies were in contradiction to Defendant RCCS's established policies.  Regardless, the assertions must fail because Plaintiffs have failed to allege what the constitutionally-deficient policies are or which established policies Defendants ignored.  *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978) (holding that a plaintiff must allege the existence of some policy, even if not the official formal policy, to maintain that it deprived him or her of a constitutional right).  What Plaintiffs have offered is merely a blanket assertion essentially saying "Defendants' policies violated our due process rights."  There is no reference to any specific policy or practice, whether official or unofficial.  This mirrors the exact sort of pleading the United States Supreme Court has held insufficient to survive a motion to dismiss.  *See Iqbal*, 556 U.S. at 678 (citing *Twombly* for the proposition that a complaint is insufficient if it only offers "'naked assertions' devoid of 'further factual enhancement'").  Plaintiffs do not offer factual enhancements exhibiting the existence of the alleged-deficient policies or that such policies violate Plaintiffs' due process rights.

Plaintiffs have failed to allege sufficient facts to support their equal protection or due process claims.

### B.  Claim for Disregard for the Rights of Families Such as Plaintiffs'

Plaintiffs claim that the facts in the Complaint profess a disregard for the rights of

8

families, such as their own.  However, Plaintiffs fail to allege any actions that constitute such disregard.  The Complaint merely declares that Defendants have demonstrated as much and that Plaintiffs have suffered injuries as a result.  It is not clear which actions in the Complaint exhibit this disregard but the Court must analyze the Complaint in a light most favorable to Plaintiffs to attempt to salvage the claim.  *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008).

Even after analyzing the Complaint in a light most favorable to Plaintiffs, drawing as many reasonable inferences as possible, Plaintiffs cannot maintain this claim.  To begin, one can only assume that Plaintiffs' injury of having "to defend unfounded charges of child abuse and medical neglect" refers to the charges Defendant Brendemuehl filed with the Richland County Juvenile Court.  However, Plaintiffs have failed to make out what these "false accusations" were. They fail to state what Defendant Brendemuehl falsely claimed or what was untrue about the supposed allegations.

Also, Plaintiffs profess emotional and physical ailments that will require medical treatment as well as a loss of consortium and family relations resulting in the inability to carry on daily activities.  Again, however, Plaintiffs have not demonstrated any actions on the part of Defendants that resulted in these injuries.  Even inferring that Plaintiffs are connecting the "false accusations" to these injuries, this does not suffice to satisfy Plaintiffs' pleading requirements. Instead, Plaintiffs make a blanket allegation with a blanket list of injuries and hope that one of the insufficient factual allegations will suffice to survive a motion to dismiss.

Further, part of determining if a motion to dismiss is appropriate is ascertaining if a complaint gives a defendant fair notice of what the plaintiff alleges and the grounds for the allegations.  *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976).  Plaintiffs' Complaint fails in

this aspect entirely.  Not only is it not clear what Plaintiffs claim Defendants did to cause these injuries but Plaintiffs' claim that Defendants engaged in illegal activities or made false statements fails to demonstrate what these activities or statements were.  It is hard to imagine how a defendant could defend him- or herself against allegations of false statements or illegal activities without knowing what they were.  The Court dismisses this claim.

### C.  Failure-to-Train Claim

Plaintiffs next claim that Defendants RCCS, Parker and Harless failed to adequately train their employees regarding child welfare and allegations of child abuse.  This claim too fails because Plaintiffs do not explain how these Defendants failed to train the employees or how their actions demonstrate such failure.

Plaintiffs fail to plead the required elements to prove a failure-to-train claim.  Where a plaintiff asserts a failure-to-train claim against a municipal entity, he or she must show that: (1) the entity's training program was not adequate for the tasks the municipal employees perform; (2) this inadequacy demonstrates the entity's deliberate indifference to the rights of individuals the employees come into contact with; and (3) this inadequacy is closely related to or actually caused the injury complained of.  *Ciminillo v. Streicher*, 434 F.3d 461, 469 (6th Cir. 2006); *Carrasquillo v. City of Cleveland*, No. 1:10CV219, 2011 WL 38441995, *7 (N.D.Ohio Aug. 30, 2011); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390-391 (1989).  Plaintiffs fail to plead sufficient allegations to satisfy the first element: Plaintiffs have not identified Defendant RCCS's training program and thus, cannot claim that such program is inadequate.  Therefore, the Court will end its inquiry and dismiss this claim as well.

10

### D. Fourth and Fourteenth Amendment Claims

Plaintiffs claim that Defendants violated their rights under "the Fourth and Fourteenth Amendments to the United States Constitution[.]" (Cmplt. ¶ 29). The Court has already addressed Plaintiffs' Fourteenth Amendment claims in the section analyzing the alleged equal protection and due process violations. Therefore, the Court will limit its analysis here to the Fourth Amendment claim.

The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

U.S. CONST. amend. IV. The Fourth Amendment applies to searches and seizures and prohibits state officials from using unreasonable force against citizens. *Soldal v. Cook County, Ill.*, 506 U.S. 56, 62 (1992); *Ciminillo v. Streicher*, 434 F.3d 461, 464-465 (6th Cir. 2006); *Farm Labor Organizing Committee v. Ohio State Highway Patrol*, 991 F.Supp. 895, 900 (N.D. Ohio 1997). A Fourth Amendment claim is a grave allegation requiring the Court to embark on a difficult analysis. However, when a plaintiff fails to plead any factual allegations that demonstrate how the State violated the Amendments' protections, it makes such an analysis near impossible. In this case, the Complaint fails to demonstrate how Defendants violated the Fourth Amendment. At most, *perhaps* Plaintiffs allege that the police officers removed the children from Plaintiffs' home in an unreasonable fashion under the Fourth Amendment. However, Plaintiffs never assert any allegation to form such a basis. In fact, regarding the police officers' conduct when removing the children from the home, Plaintiffs never exhibit any animosity toward the action. Rather, Plaintiffs merely state that the act took place.

Plaintiffs must sufficiently plead the facts and circumstances which form the basis for their challenge.  *See Iqbal*, 556 U.S. at 676-677 (demonstrating that to make a constitutional claim, the plaintiff must plead and prove how the defendant acted in contradiction to the Constitution).  A pleading offering "labels and conclusions" is insufficient.  *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).  This claim is exactly what the Supreme Court forbids: a label- i.e. a Fourth Amendment claim- and a conclusion- i.e. Defendants violated it- without facts to support the assertion.  The Complaint fails to demonstrate that Plaintiffs are entitled to relief under the Fourth Amendment.

### E.  Willful and Wanton Misconduct and/or Reckless Disregard for the Rights of Others Claim

Plaintiffs' last allegation is that Defendants violated the "rights of others."  However, Plaintiffs do not assert any facts that show Defendants violated the "rights of others."  Further, Plaintiffs' blanket terms "rights" and "others" fail to concisely state what or whose rights Defendants violated.  Did Defendants violate constitutional rights?  Did they violate statutory rights?  If they did, which and whose constitutional or statutory rights?  Defendants cannot be said to be on notice for this claim without having a clue as to what or whose rights Plaintiffs are referencing.  The Court dismisses this claim.

### F.  Section 1983 Action

A §1983 claim is the vehicle by which a plaintiff brings legal rights claims against anyone who, acting under color of state law, deprives another individual of their rights.  *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995); *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254-257 (1978)).  The elements of a §1983 action require a plaintiff to show: "(1) the deprivation of a right secured by the Constitution or the laws of the

United States and (2) [that] such deprivation was caused by a person acting under color of state law." *Id.* (citing *Simescu v. Emmet County Dept. of Social Servs.*, 942 F.2d 372, 374 (6th Cir. 1991).  Therefore, if a plaintiff fails to make out a claim that a defendant deprived him or her of such a right, then the plaintiff cannot maintain a §1983 action.  *See Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008) (prefacing a §1983 analysis by qualifying the action on the establishment of a constitutional violation).

Because all of Plaintiffs' federal claims fail, they cannot satisfy the first element of a §1983 action.  Therefore, the Court dismisses this claim as well.

### G.  Remaining State Law Claims

Because the Court dismisses Plaintiffs' federal causes of action against Defendants, the Court will not exercise jurisdiction over the remaining state law claims.  The Sixth Circuit decision in *Musson Theatrical, Inc. v. Federal Exp. Corp.* stands for the proposition that after a court dismisses federal claims pursuant to a 12(b)(6) motion, "there is a strong presumption in favor of dismissing supplemental claims."  89 F.3d 1244, 1255 (6th Cir. 1996).  Based on this premise, the Court dismisses the remaining supplemental state law claims without prejudice.

### H.  Plaintiffs' Request for Leave to Amend

Plaintiffs have requested that if the Court finds the Complaint is insufficient to withstand a 12(b)(6) motion to dismiss then the Court should grant them leave to amend the Complaint. However, the Court follows the Sixth Circuit's guidance that a plaintiff must properly file a motion for leave to amend under Fed R. Civ. P. 7(b) and cannot merely place such a request in a brief in opposition.  *Prim Capital Corp. v. Pippen*, No. 1:09CV561, 2009 WL 2579810, *2 (N.D. Ohio Aug. 19, 2009) (citing *Begala v. PNC Bank, Ohio N.A.*, 214 F.3d 776, 784 (6th Cir. 2000).

13

The policy behind this is that district courts should not stand to "rescue" plaintiffs from the deficiencies of their complaints by offering leave to amend when plaintiffs do not properly request leave.  *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 438 (6th Cir. 2008).  Similarly here, Defendants have pointed out the deficiencies of Plaintiffs' Complaint and Plaintiffs should not have the benefit of being rescued by the Court merely because they have now become aware of these deficiencies.  The Court denies the request for leave to amend.

### III.  CONCLUSION

For the foregoing reasons, the Court dismisses with prejudice: (1) Plaintiffs' federal equal protection and due process claims; (2) Plaintiffs' federal "disregard for the rights of families such as plaintiffs" claim; (3) Plaintiffs' federal failure-to-train claim; (4) Plaintiffs' Fourth and Fourteenth Amendment claims under the U.S. Constitution; (5) Plaintiffs' federal violations of the "rights of others" claim; and (6) Plaintiffs' §1983 claim.  In addition, the Court dismisses the remaining state law claims without prejudice.

**IT IS SO ORDERED.**

**s/ Christopher A. Boyko**
**CHRISTOPHER A. BOYKO**
**United States District Judge**

**Dated: March 28, 2014**

14